**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

IN RE:

ENVIROSCENT, INC.,

      **Debtor.**

**CHAPTER 11**

**CASE NO. 24-62804-JWC**

**DEBTOR'S AMENDED MOTION FOR ENTRY OF ORDER: (I) AUTHORIZING
DEBTOR TO OBTAIN POST-PETITION SECURED FINANCING PURSUANT TO
11 U.S.C. §§ 105, 361, 362, & 364, (II) GRANTING LIENS AND PROVIDING
SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, AND
(III) GRANTING RELATED RELIEF**

COMES NOW Enviroscent, Inc. ("Debtor") and, by and through undersigned counsel, hereby files this *Debtor's Amended Motion for Entry of Order: (I) Authorizing Debtor to Obtain Post-Petition Secured Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, & 364, (II) Granting Liens and Providing Superpriority Administrative Expense Status, and (III) Granting Related Relief* (this "Motion"). In support of this Motion, Debtor respectfully shows as follows:

**JURISDICTION AND VENUE**

1.     This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A). Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409(a).

2.     The bases for the relief requested herein are Sections 105(a), 363, 364, 365, 503, and 507 of Title 11 of the United States Code (the "Bankruptcy Code"), and Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

1

## BACKGROUND

### A.  General Background

3.  On December 3, 2024, (the "Petition Date"), Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code, initiating the above-captioned case (this "Case").

4.  Debtor is a Delaware corporation registered to do business in Georgia. Debtor operates as a producer of non-toxic, patent protected, sustainable air care products (the "Business").

5.  Debtor is in need of immediate funds to keep its Business operational. Without an infusion of Debtor-in-Possession financing, Debtor will become unable to service its clients and will be unable to successfully restructure.

### B.  Secured Indebtedness

6.  It appears that First Corporation Solutions as representative and Alterna Capital Solutions, LLC ("Alterna") may assert a security interest in Debtor's cash, the proceeds generated from Debtor's Business operations, and/or certain portions of Debtor's operating revenues which would constitute cash collateral with the meaning of 11 U.S.C. § 363 (the "Cash Collateral").

7.  It further appears that Alterna asserts its lien is perfected by the filing of UCC-1 Financing Statements (collectively, the "Lien"), as more particularly described in the UCC-1 Financing Statement No. 20247984014 filed on November 15, 2024, in the corporate records in the State of Delaware.

8.  Additionally, Daniel Smith; Michael Burnham; Kevin Robinson; Second Half, LLC; Shibe Storage, LLC; Langdale Capital Assets, Inc.; and, Ted Garner by and through the Frederic Garner Trust (collectively, the "Non-Participating Patent Lenders"), assert a security interest in Debtor's Patents, along with the DIP Lenders as hereinafter defined.

2

9.      Debtor represents that its continued operations will generate the greatest amount of funds for all parties in interest, including Alterna and the Non-Participating Patent Lenders.

10.     Debtor is not aware of any other claims of liens or security interests.

## C.      Summary of Terms of DIP Facility

11.     Under the disclosure requirements of Bankruptcy Rule 4001(c) and (d), the following tables concisely summarize the significant terms of the *Enviroscent DIP Loan* (the "DIP Loan")[1] which Debtor seeks to enter into with Certain Participating Noteholders as more specifically set forth on **Exhibit "A"** (the "DIP Lenders") from the Lenders participating in the October 11, 2024 Loan Agreement (the "2024 Lenders") between Frederick E. Hopkins, III, Agent and Enviroscent, Inc.  (the "2024 Loan Agreement"):

| Summary of Relevant Provisions[2] | |
|---|---|
| **Borrower** | Enviroscent, Inc. (or its post-bankruptcy successor) |
| **Guarantor** *Bankruptcy Rule 4001(c)(1)(B)* | None |
| **DIP Agent** *Bankruptcy Rule 4001(c)(1)(B)* | None |
| **Amount and Facility** *Bankruptcy Rule 4001(c)(1)(B)* | A senior secured super-priority term loan to Borrower in an aggregate principal amount of Five-Hundred Thousand Dollars ($500,000.00) for Borrower's operational expenses (collectively, the "Commitment"). |

---

[1] For this Motion "DIP Loan" means the total loan facility.

[2] To the extent there exists any inconsistency between this summary and the provisions of the DIP Loan Documents or the DIP Order, the provisions of the DIP Loan Documents or the DIP Order, as applicable, shall control.

| | |
|---|---|
| **Funding Use of Proceeds** *Bankruptcy Rule 4001(c)(1)(B)* | Funding shall be used to pay Debtor operational expenses, in accordance with the then-current Approved Budget. |
| **Maturity** *Bankruptcy Rule 4001(c)(1)(B)* | "Maturity Date" shall mean December 31, 2025 following the Effective Date of the Loan. |
| **Interest** | The DIP Loan shall accrue interest at a rate of 6% per annum. |
| **DIP Repayment** | At the Maturity Date, the Borrower agrees to pay to the Lender a total sum of $508,786.37 in complete satisfaction of the DIP Loan. This amount represents $500,000.00 in principal and $8,786.37 in interest. |
| **DIP Collateral** | The DIP Loan shall be secured by a super priority first priority priming lien on all of the Debtor's assets including, but not limited to, AR, Inventory, Cash, IP and the Patents. |

| Summary of Relevant Provisions | |
|---|---|
| **Mandatory Prepayments** *Bankruptcy Rule 4001(c)(1)(B)* | None |
| **Security and Priority** *Bankruptcy Rule 4001(c)(1)(B)(i)* | To secure the Borrower's obligations under the DIP Loan ("Obligations"), effective immediately upon entry of an order approving the DIP Loan or, if any other order approving the DIP Loan, Borrower grants DIP Lender continuing, valid, binding, enforceable, non- avoidable, and automatically and properly perfected post-petition, first-priority security interests in and liens as follows: pursuant to Section 364(d)(1), a first priority perfected senior priming security interest in and senior priming lien on all assets of the Debtor. |
| **Special Provisions** | Debtor shall pay the cost of the DIP Lender's attorneys' fees and expenses incurred in negotiating and preparing the DIP Loan Documents. |
| **Reporting** *Bankruptcy Rule 4001(c)(1)(B)* | Normal financial reporting consistent with the prior business practices of the Debtor. |
| **Adequate Protection** *Bankruptcy Rule 4001(c)(1)(B)(ii)* | The proceeds from the DIP Loan are to be used to preserve Debtor's estate by funding the operations of Debtor. |

| | |
|---|---|
| **Defaults and Events of Default** *Bankruptcy Rule 4001(c)(1)(B)* | The Agreement shall contain events of default customary or appropriate in the context of the proposed DIP Loan, or as otherwise required by the Lender (the "Events of Default"), including, without limitation (i) the violation of any term, provision or condition in the Agreement or order approving the DIP Loan; (ii) dismissal or conversion of the Chapter 11 Case or appointment of a Chapter 11 trustee or examiner or another estate representative with expanded powers prior to confirmation of a Chapter 11 Plan of Reorganization, and (iii) sale of Debtor's estate assets without Lender's consent. |
| **Remedies** *Bankruptcy Rule 4001(c)(1)(B)* | The Agreement shall contain appropriate remedies for an uncured Event of Default. |

| Summary of Relevant Provisions | |
|---|---|
| **DIP Termination Date** *Bankruptcy Rule 4001(c)(1)(B)* | The earliest of (i) the Maturity Date, or (ii) the occurrence of an Event of Default that is not cured pursuant to the DIP Loan or waived by Lender, as will be established in the Agreement. |

| | |
|---|---|
| **Indemnification** *Bankruptcy Rule 4001(c)(1)(B)(ix)* | The Agreement shall contain indemnification provisions which will be substantially consistent with the indemnification provisions contained in similar debtor-in-possession loan agreements. |
| **Automatic Stay Waiver/Modification** *Bankruptcy Rule 4001(c)(1)(B)(iii)* | The order approving the DIP Loan shall provide customary waivers of the automatic stay (to the extent the same is still in place) in connection with the Lender's enforcement of remedies upon an Event of Default. |
| **Waiver/Modification of Applicability of Nonbankruptcy Law Relating to Perfection or Enforceability of Liens** *Bankruptcy Rule 4001(c)(1)(B)(vii)* | The Order approving this DIP Loan will provide for a customary waiver/modification of applicability of nonbankruptcy law to the perfection or enforcement of liens. |
| **Covenants** *Bankruptcy Rule 4001(c)(1)(B)* | Affirmative and Negative Covenants: Customary affirmative and negative covenants will be required by DIP Lender in the Agreement. |
| **Releases** *Bankruptcy Rule 4001(c)(1)(B)(viii)* | The Agreement shall contain releases customary for debtor-in-possession loans of this kind. |

**D.      Debtor's Need for Postpetition Financing**

12.      At the present time, Debtor is unable to sufficiently generate cash to operate their Business and satisfy their obligations. Given Debtor's current financial condition, financing arrangements, and capital structure, Debtor has an immediate need to obtain the DIP Loan to permit Debtor to, among other things, continue the orderly operation of the Business, maximize and preserve Debtor's going concern value, make payroll, satisfy working capital obligations, and pay other costs, fees, and expenses associated with administration of this Case.

13.      In the absence of the authority of this Court to borrow under the DIP Loan, Debtor's estate would suffer immediate and irreparable harm because, among other reasons, Debtor would be unable to make payroll and keep its clients adequately serviced.

14.      Debtor is unable to obtain financing from sources other than the DIP Lender on terms more favorable than the DIP Loan and is unable to obtain adequate unsecured credit under Bankruptcy Code Section 364(b) allowable as an administrative expense under Bankruptcy Code Section 503(b)(1). Debtor is also unable to obtain unsecured credit on a superpriority basis under Bankruptcy Code Sections 364(c)(1) or secured credit on a non-priming basis under Bankruptcy Code Section 364(c)(2) or (3). Debtor is unable to obtain the DIP Loan without granting the liens and claims as set forth below. After considering all alternatives, Debtor has concluded, in the exercise of its sound business judgment, that the DIP Loan represents the best financing available to Debtor at this time.

15.      The DIP Lender and Debtor have agreed to the DIP Loan on the terms and conditions set forth in the Final Order. Debtor firmly believes that no other lender would provide financing to Debtor on more favorable terms at this time. Upon information and belief, neither the Non-Participating Patent Lenders nor Alterna oppose the relief sought herein.

6

## **RELIEF REQUESTED**

16.    By this Motion, Debtor request entry of an order substantially in the form of the

proposed order attached hereto as **Exhibit "B"**, which would permit Debtor to:

a.  Obtain senior secured post-petition financing (the "DIP Financing" or "DIP Facility") pursuant to the terms and conditions of the DIP Loan Documents (as defined herein) pursuant to Sections 105, 361, 362, and 364 of the Bankruptcy Code and Rule 4001(c) of the Bankruptcy Rules;

b.  Enter into a Debtor-in-Possession Loan Agreement (the "DIP Loan Agreement"), by and among each of Debtor, as borrower, and DIP Lender, as lender, under the DIP Loan Agreement and other related financing documents (the "DIP Loan Documents");

c.  Borrow, pursuant to the DIP Loan Documents, postpetition financing of up to $500,000.00 under the DIP Loan Agreement and seek other financial accommodations from the DIP Lender pursuant to the DIP Loan Agreement;

d.  Execute and deliver the DIP Loan Agreement and the other DIP Loan Documents;

e.  Grant the DIP Lender an automatically perfected first priority senior security interests in all Debtor's assets, including, without limitation, the proceeds of the same to the extent they would constitute "cash collateral," (as defined in Section 363(a) of the Bankruptcy Code, "Cash Collateral"), pursuant to Section 364(d)(1) of the Bankruptcy Code, which liens shall not be subject to any other liens, charges or security interests, nor to surcharge under Section 506(c) or any other section of the Bankruptcy Code;

f.  Obtain authorization to use the proceeds of the DIP Loan Agreement in all cases in accordance with the budget, a copy of which is attached to Debtor's most recent Cash Collateral budget and as may be modified from time to time (Docket No. 126) (the "Budget");

g.  Obtain authorization to use the Cash Collateral in accordance with the Budget;

h.  Vacate and modify the automatic stay imposed by Section 362 of the Bankruptcy Code solely to the extent necessary to implement and effectuate the terms of the DIP Loan Documents, this DIP Order; and waive any applicable stay as provided in the Bankruptcy Rules and provide for  immediate effectiveness of this DIP Order.

17.     Additionally, Debtor requests that the Court rule that neither Alterna nor the Non-Participating Patent Lenders are entitled to additional adequate protection in order to authorize the DIP Loan. Alterna and the Non-Participating Patent Lenders are over-secured by Debtor's assets and are therefore currently adequately protected by replacement liens placed on Debtor's previously unencumbered assets.

## BASIS FOR RELIEF REQUESTED

### A.     Debtor Should be Authorized to Obtain Post-Petition Financing

18.     Debtor respectfully submits that it is unable to obtain post-petition financing on more favorable terms; post-petition financing is necessary to preserve the value of Debtor's estate; the DIP Loan and its terms are reasonable under the circumstances; the pre-petition secured creditors, Alterna and the Non-Participating Patent Lenders, are adequately protected; and it is within Debtor's sound and prudent business judgment to obtain post-petition financing in the form of the DIP Loan.

### (i)     No More Favorable Facility is Available and Post-Petition Financing is Necessary to Preserve the Value of Debtor's Estate

19.     "Having recognized the natural reluctance of lenders to extend credit to a company in bankruptcy; Congress designed [section] 364 to provide 'incentives to the creditor to extend postpetition credit.'" *In re Defender Drug Stores, Inc.*, 126 B.R. 76, 81 (Bankr. D. Ariz. 1991). "Section 364 provides certain incentives that a trustee or debtor in possession may offer, with court approval, to induce potential lenders to undertake the risks involved in providing post-petition financing to a bankruptcy estate." *In re Cannonsburg Environmental Assocs., Ltd.*, 72 F.3d 1260, 1267 (6th Cir. 1996) (citing *In re Sun Runner Marine, Inc.*, 945 F.2d 1089 (9th Cir. 1991)).

20.     Bankruptcy Code Section 364 permits debtors to obtain secured or superpriority

post-petition financing when unsecured credit is not available. More specifically, Section 364(c)

provides:

> (c) If the trustee is unable to obtain unsecured credit allowable under
> section 503(b)(1) of this title as an administrative expense, the
> court, after notice and a hearing, may authorize the obtaining of
> credit or the incurring of debt—
>
>> (1) with priority over any or all administrative expenses of
>> the kind specified in section 503(b) or 507(b) of this title;
>>
>> (2) secured by a lien on property of the estate that is not
>> otherwise subject to a lien; or
>>
>> (3) secured by a junior lien on property of the estate that is
>> subject to a lien.

11 U.S.C. § 364(c). Courts typically consider three factors when determining whether a debtor is

entitled to post-petition financing:

> (1) whether the debtor is unable to obtain unsecured postpetition
> credit pursuant to Bankruptcy Code section 364(b);
>
> (2) whether the credit transaction is necessary to preserve the value
> of the estate; and
>
> (3) whether "the terms of the transaction are fair, reasonable, and
> adequate, given the circumstances of the debtor-borrower and the
> proposed lender."

*In re Aqua, Assocs.*, 123 B.R. 192, 195-96 (Bankr. E.D. Pa. 1991). *See also In re Ames Dep't*

*Stores*, 115 B.R. 34, 37-40 (Bankr. S.D.N.Y. 1990).

21.     With regard to so-called "priming liens," Section 364(d)(1) provides that:

> The court, after notice and a hearing, may authorize the obtaining
> of credit or the incurring of debt secured by a senior or equal lien
> on property of the estate that is subject to a lien only if—
>
>> (A) the trustee is unable to obtain such credit otherwise; and

9

(B) there is adequate protection of the interest of the holder of
the lien on the property of the estate on which such senior
or equal lien is proposed to be granted.

11 U.S.C. § 364(d)(1).

22.    Debtor is not obligated and has "no duty to seek credit from every possible lender before concluding that such credit is unavailable." *Bray v. Shenandoah Fed. Say. & Loan Assn. (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986) ("The statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable."); *see also Pearl-Phil GMT (Far East) Ltd. v. Caldor Corp.*, 266 B.R. 575, 584 (S.D.N.Y. 2001); *In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 630 (Bankr. S.D.N.Y. 1992). When there are few lenders likely, able, or willing to extend the necessary credit to the debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct such an exhaustive search for financing." *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), *aff'd sub nom.*, *Anchor Say. Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117,120 n.4 (N.D. Ga. 1989). *See also In re Mid-State Raceway, Inc.*, 323 B.R. 40, 58 (Bankr. N.D.N.Y. 2005); *Ames*, 115 B.R. at 37-39; *In re Stanley Hotel, Inc.*, 15 B.R. 660, 663 (D. Colo. 1981); *In re Garland Corp.*, 6 B.R. 456, 461 (B.A.P. 1st 1980); *In re Plabell Rubber Prods., Inc.*, 137 B.R. 897, 900 (Bankr. N.D. Ohio 1992).

23.    Despite its best efforts, Debtor was unable to find post-petition financing on more favorable terms than those proposed in the DIP Loan. Debtor has determined that the DIP Loan is the best source of funding and provides two benefits which no other source of funding could: (a) the DIP Loan minimizes the delay time it would take for the loaned fund to actually be disbursed to Debtor, and (b) the DIP Loan allows Debtor to fund its Business without further encumbering Debtor's assets.

24.    While Debtor is not obligated to seek credit from every potential source, Debtor nevertheless undertook a process to evaluate other sources of post-petition financing. No parties were willing to provide post-petition financing on an unsecured, administrative priority basis. Thus, this Court's approval of DIP Lender's superpriority lien on Debtor's assets is reasonable and appropriate under the circumstances. Debtor was similarly unable to secure post-petition financing on a junior basis pursuant to Section 364(c)(2) or (3). The terms of the DIP Loan therefore meet the requirements imposed by Section 364(d)(1). No alternative funding was available on a junior basis the interests of Alterna and the Non-Participating Patent Lenders are adequately protected.

25.    More specifically, Alterna and the Non-Participating Patent Lenders are adequately protected by a substantial amount of unencumbered equity in Debtor's assets. As set out herein, both Alterna and the Non-Participating Patent Lenders can have their security interest attach to available equity present in Debtor's assets:

| Secured Creditor | Claim | Collateral | Collateral Value |
|---|---|---|---|
| Alterna | $469,711.58 | Bank of America Acct. 4144 | $192,290.36 |
| | | Accounts Receivable | $468,481.79 |
| | | Inventory (Scheduled at $3,112,318.91) | $2,440,375.29 |
| | | IT Equipment | $67,058.63 |
| | | Machinery & Tools | $46,923.95 |
| | | Total Collateral | $3,215,130.02 |
| | | **Excess Collateral Over & Above Alterna Lien:** | **$2,745,418.44** |
| | | *Even If the Above isn't Enough Collateral….* | |
| | | Patents (**NOTE:** SECOND IN PRIORITY TO THE NON-PARTICIPATING PATENT LENDERS; WHO HAVE A MAX CLAIM OF $5,000,000, SCHEDULED AT $3,730,000) | $37,000,000.00 |
| **Aggregate Total:** | | | **$40,215,130.02** |
| **Total *Less* Scheduled Non-Participating Patent Lenders:** | | | **$36,485,130.02** |
| **Oversecured Position pre-DIP Loan (*Less* Alterna Debt):** | | | **$36,015,418.44** |
| DIP Lenders | $508,786.37 | All Above Listed Assets, Super-Priority: | $36,015,418.44 |
| **Alterna Remaining First Priority Security Interest Post-DiP Loan:** | | | **$35,506,632.07** |

26.     Further, the DIP Loan is necessary to preserve the going-concern value of the Debtor's estate. Without post-petition financing, Debtor would be unable to meet its regular recurring payroll obligations. Debtor would also be unable to meet ordinary course obligations and continue to run the Business. Thus, the DIP Loan provides Debtor with an opportunity to continue operations and maximize the values of its estate. *See Burtch v. Ganz (In re Mushroom Transp. Co., Inc.*, 382 F.3d 325, 339 (3d Cir. 2004) (noting that debtors in possession have a duty to "protect and maximize" the values of their estates).

### (ii)     Debtor Has Exercised Sound and Reasonable Business Judgment

27.     When obtaining post-petition financing, debtors who utilize their sound business judgment are afforded considerable deference, so long as the postpetition financing does not conflict with the policies underlying the Bankruptcy Code. *See, e.g.*, *Trans World Airlines, Inc. v. Travellers Int'l AG (In re Trans World Airlines, Inc.)*, 163 B.R. 964, 974 (Bankr. D. Del. 1994) (approving postpetition loan and receivable facility because they "reflect[ed] sound and prudent business judgment"); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("cases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit parties in interest."). *See also Richmond Leasing Co. v. Capital Bank N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985) ("[m]ore exacting scrutiny [of the debtor's business decisions] would slow the administration of the debtors' estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate and threaten the court's ability to control a case impartially."). Further,

> *courts will almost always defer to the business judgment of a debtor in the selection of the lender.* The business judgment rule

is a standard of judicial review designed to protect the wide latitude conferred on a board of directors in handling the affairs of the corporate enterprise. The rule refers to the judicial policy of deferring to the business judgment of corporate directors in the exercise of their broad discretion in making corporate decisions.

*Under the rule, courts will not second-guess a business decision, so long as corporate management exercised a minimum level of care in arriving at the decision.* The business judgment rule under Delaware law and the law of numerous other jurisdictions establishes a presumption that in making a business decision, the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the company. Under this formulation, the business judgment rule governs unless the opposing party can show one of four elements:

(1) the directors did not in fact make a decision, (2) the directors' decision was uninformed; (3) the directors were not disinterested or independent; or (4) the directors were grossly negligent.

*In re L.A. Dodgers LLC*, 457 B.R. 308, 313 (Bankr. D. Del. 2011) (emphasis added). *See also In re Barbara K. Enters., Inc.*, Case No. 08-11474, 2008 WL 2439649, at * 14 (Bankr. S.D.N.Y. 2008) (noting that bankruptcy courts will defer to a debtor's business judgment "so long as a request for financing does not 'leverage the bankruptcy process' and unfairly cede control of the reorganization to one party in interest") (quoting *In re Ames Dep't Stores, Inc.*, 115 B.R. at 40); *In re Farmland Indus., Inc.*, 294 B.R. 855, 881 (Bankr. W.D. Mo. 2003).

28.     To determine whether a debtor has met the business judgment standard, a court need only "examine whether a reasonable business person would make a similar decision under similar circumstances." *In re Exide Techs.*, 340 B.R. 222, 239 (Bankr. D. Del. 2006), *rev'd on other grounds* 607 F.3d 957 (3d Cir. 2010). *See also In re Curlew Valley Assocs.*, 14 B.R. 506, 511-14 (Bankr. D. Utah 1981) (noting that courts generally will not second-guess a debtor in possession's business decisions when those decisions involve "a business judgment made in good

faith, upon a reasonable basis, and within the scope of his authority under the Code."). This inquiry involves the consideration of whether the terms are fair when considering the terms in light of the relevant circumstances of the debtor and the potential lender. *In re Farmland Indus., Inc.*, 294 B.R. 855, 881 (Bankr. W.D. Mo. 2003). Courts may also look to noneconomic benefits of postpetition financing. *See, e.g.*, *In re Ion Media Networks, Inc.*, No. 09-13125, 2009 WL 2902568, at \*4 (Bankr. S.D.N.Y. July 6, 2009) ("Although all parties, including the Debtors and the Committee, are naturally motivated to obtain financing on the best possible terms, a business decision to obtain credit from a particular lender is almost never based purely on economic terms. Relevant features of the financing must be evaluated, including non-economic elements such as the timing and certainty of closing, the impact on creditor constituencies and the likelihood of a successful reorganization. This is particularly true in a bankruptcy setting where cooperation and established allegiances with creditor groups can be a vital part of building support for a restructuring that ultimately may lead to a confirmable reorganization plan. That which helps foster consensus may be preferable to a notionally better transaction that carries the risk of promoting unwanted conflict.").

29.     Here, Debtor has determined that the terms and conditions set forth in the DIP Loan are fair and reasonable. The DIP Loan will allow Debtor to access up to $500,000.00 in funds. These funds are needed to preserve the value of the Debtor's estate.

30.     Debtor has determined, in its sound business judgment, based upon its own analysis and the recommendations of their professionals, that the DIP Loan provides the best opportunity for post-petition financing on the most favorable terms available. It is necessary to preserve the administration of this Case, and therefore, will benefit all creditors.

### (iii)    The Terms of the DIP Loan are Reasonable

31.    The DIP Lender was not willing to provide post-petition financing without certain terms, including a superpriority lien on Debtor's assets. These terms are typical and neither Debtor, nor any other party, are able to veto certain provisions which do not comport with their interests. *See In re Ellingsen MacLean Oil Co.*, 65 B.R. 358, 365 (W.D. Mich. 1986), *aff'd*, 834 F.2d 599 (6th Cir. 1987) ("Some of the terms of the bargain reached between debtor and creditor may reach beyond the usual terms of a loan agreement. However, such terms are perfectly normal considering the 'unusual' situation of a bankrupt firm. In such situations the bankruptcy court would rightfully be more interested by the requirements and provisions of section 364 of the Code, than it would be by a picayune examination of every legal argument that could be brought against separate provisions of the proposed agreement."). No term of the DIP Loan Agreement is so egregious as to deny this Motion. *See generally Adelphia Commc'ns Corp.*, 2004 WL 1634538, at \*2 (Bankr. S.D.N.Y. June 22, 2004) ("Determining whether proceeding with a financing which is subject to conditions makes sense is likewise a classic business decision.").

32.    Taken as a whole, the terms of the DIP Loan are fair and reasonable considering the circumstances of Debtor and the DIP Lender. *See, e.g.*, *Farmland Indus.*, 294 B.R. at 886. *See also In re ION Media Networks, Inc.*, Case No. 09-13125, 2009 WL 2902568, at \*4 (Bankr. S.D.N.Y. July 6, 2009) ("Although all parties, including the Debtors and the Committee, are naturally motivated to obtain financing on the best possible terms, a business decision to obtain credit from a particular lender is almost never based purely on economic terms. Relevant features of the financing must be evaluated, including non-economic elements such as the timing and certainty of closing, the impact on creditor constituencies and the likelihood of a successful reorganization. This is particularly true in a bankruptcy setting where cooperation and establishing

15

alliances with creditor groups can be a vital part of building support for a restructuring that ultimately may lead to a confirmable reorganization plan. That which helps to foster consensus may be preferable to a notionally better transaction that carries the risk of promoting unwanted conflict.").

33.     The terms and conditions of the DIP Loan were negotiated by the parties in good faith and at arm's length. Debtor will require significant post-petition financing to support operations and restructuring. Only the DIP Lender was able to provide a facility which was adequate, reasonable, and fair under the circumstances. Therefore, the Court should find that the DIP Lender to be a "good faith" lender within the meaning of Bankruptcy Code section 364(e).

**B.      Modification of the Automatic Stay is Warranted**

34.     The relief requested by this Motion contemplates a modification of the automatic stay. 11 U.S.C. § 362. The automatic stay should be modified on a limited basis to permit the DIP Lender to exercise, upon the occurrence and during the continuation of an Event of Default, all rights and remedies provided for in the DIP Loan Documents and to take other remedies relating to the Collateral without further order or application to the Court.

35.     The relief requested herein further contemplates a modification and vacation of the automatic stay to permit the Debtor to, among other things, (a) grant the security interests, liens, and superpriority claims described above and to perform such acts as may be requested to assure the perfection and priority of such security interests and liens; and (b) implement the terms of the proposed DIP Order, including payment of all amounts referred to in the DIP Loan Documents

16

36. This type of modification of the automatic stay is ordinary and standard feature of post-petition debtor in possession financing facilities, and, in Debtor's business judgment, reasonable and fair under the current circumstances.

## WAIVER OF BANKRUPTCY RULES
### 4001(a), 6004(a), and 6004(h)

37. Debtor requests a waiver of the stay of the effectiveness of the order approving this motion under Bankruptcy Rule 4001(a)(4). Bankruptcy Rule 4001(a)(4) provides that "[an] order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of fourteen days after entry of the order, unless the court orders otherwise." As set forth herein, the receipt of the DIP Loan and operating capital is immediately necessary to allow Debtor to operate its Business. Accordingly, Debtor submits that ample cause exists to justify the waiver of the fourteen-day stay imposed by Bankruptcy Rule 4001(a)(4).

38. To implement the foregoing successfully, the Debtor seeks waivers of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h). As explained above, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtor. Accordingly, ample cause exists to justify the waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and such stay apply.

## NOTICE

39. Notice of this Motion will be given to: (a) the Office of the United States Trustee for the Northern District of Georgia; (b) the parties included on each Debtor's list of twenty (20) largest unsecured creditors; (c) counsel to Alterna; (d) the United States Trustee; (e) counsel to

the DIP Lenders, (f) the Non-Participating Patent Lenders, and (g) any party that has requested notice in this case. Debtor submits that, under the circumstances, no other or further notice is required.

## NO PRIOR REQUEST

40.    No prior request for the relief sought in the motion has been made to this or any other court.

## CONCLUSION

WHEREFORE, Debtor requests this Court enter an order, substantially in the form of **Exhibit "A"**, granting the relief requested herein and such other and further relief as the Court may deem just and proper.

Respectfully submitted this 10th day of June, 2025.

**JONES & WALDEN LLC**

/s/ *Cameron M. McCord*
Cameron M. McCord
Georgia Bar No. 143065
Mark D. Gensburg
Georgia Bar No. 213119
699 Piedmont Ave. NE
Atlanta, Georgia 30308
(404) 564-9300
cmccord@joneswalden.com
mgensburg@joneswalden.com
*Attorneys for Debtor*

## EXHIBIT "A"

### Certain Participating Noteholders

| Participating Noteholder[3] | Total Participating Loan Amount[4][5] |
|---|---|
| Jeffrey S. Amling | $75,000 |
| John W. Donahoo, III, individually and through the Raymond F. and Dorothy M. Prahl Charitable Trust | $192,500 |
| Bruce Failing | $100,000 |
| Vere Gaynor | $137,500 |
| Patrick Henry through the Henry Trust Company, Ltd. | $100,000 |
| Benjamin M. Hough | $100,000 |
| Robert A. Jones | $50,000 |
| Peter L. Keane | $50,000 |
| William P. Langdale III | $100,000 |
| Andrew McCain through the Andrew and Lucy McClain Family Trust | $137,500 |
| Ben McFarland[6] | |
| Randy Metcalfe through the Randolph C. Metcalfe Living Truste | $200,000 |
| Stuart R. Sherrill through the Sherrill Childrens GST Irrevocable Trust FBO Stuart R. Sherrill UAD 8/23/2000 | $100,000 |
| John C. Tucker | $50,000 |

---

[3] Each person listed below participated in the 2024 Loan.

[4] Each Participating Investor will participate pro rata in the $500,000 DIP Loan.  Based on the present amounts, the percentage attributable to the DIP Loan is 35.7%

[5] Additional 2024 Lenders are still considering whether to participate in the Bankruptcy Financing and this amount may increase and additional Participants may be added.

[6] McFarland has stated he intends to participate but the amount of his participation has not been determined.

## EXHIBIT "B"

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

**IN RE:**

**ENVIROSCENT, INC.,**

       **Debtor.**

**CHAPTER 11**

**CASE NO. 24-62804-JWC**

**ORDER AUTHORIZING DEBTOR TO
OBTAIN POST-PETITION SECURED, SUPERPRIORITY
FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, AND 364**

THIS MATTER is before the Court on the *Debtor's Amended Motion for Entry of Order: (I) Authorizing Debtor to Obtain Post-Petition Secured Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, & 364, (II) Granting Liens and Providing Superpriority Administrative Expense Status, and (III) Granting Related Relief* (Doc. No. __) (the "Motion") by the above-captioned debtor-in-possession, Enviroscent, Inc. (the "Debtor"). The Court having considered the Motion; and having determined that the Court has jurisdiction over the Motion and the relief requested therein; and in accordance with Bankruptcy Rule 4001(c), due and proper notice of the Motion having been given;

and a hearing to consider the Motion having been held on _____, 2025 (the "Hearing"); and upon all pleadings filed with the Court and all of the proceedings held before this Court; and the Court having noted all appearances at the Hearing; and it appearing that the relief requested in the Motion is in the best interests of Debtor, the estate, and creditors; and after due deliberation and consideration, sufficient cause appearing therefore, it is hereby found:

A.      Jurisdiction and Venue. This Court has core jurisdiction over the Motion and the relief sought therein pursuant to 28 U.S.C. §§ 157(b)(2)(D) and 1334. Venue for these Chapter 11 Cases is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

B.      Notice. Proper notice under the circumstances has been given by Debtor of the Motion and the Hearing pursuant to Bankruptcy Rule 4001(b).

C.      Purpose and Necessity of Financing. Debtor requires the debtor-in-possession loan (the "DIP Financing") proposed in the Motion to be issued by Certain Participating Noteholders (the "DIP Lenders") to fund among other things, continue the orderly operation of the Business, maximize and preserve Debtor's going concern value, make payroll, satisfy working capital obligations, and pay other costs, fees, and expenses associated with administration of this Case and for other purposes permitted by this Order and the DIP Loan Agreement (as defined in the Motion). Debtor is unable to obtain adequate unsecured credit allowable as an administrative expense under Bankruptcy Code Section 503, or other financing under Bankruptcy Code Sections 364(c) or (d), on equal or more favorable terms than those set forth in the DIP Loan Agreement based on the totality of the circumstances. Moreover, a loan facility in the amount provided by the DIP Loan Agreement is not available to Debtor without granting superpriority claims and priming liens pursuant to the Bankruptcy Code, as provided in this Order and the DIP Loan Agreement. After considering all alternatives, Debtor has concluded, in the exercise of its prudent business

judgment, that the DIP Loan Agreement represents the best financing package available to Debtor at this time and is in the best interests of the estate and its creditors.

D.    Adequate Protection. Alterna Capital Solutions, LLC ("Alterna") and the Non-Participating Patent Lenders are over secured in connection with its liens against property of the estate as set forth in the Motion, and is granted adequate protection as previously provided in connection with the use of cash collateral and in the form of replacement liens placed on Debtor's assets constituting property of the estate.

E.    Good Cause. The ability of Debtor to obtain sufficient working capital and liquidity under this Order is vital to Debtor's estate and creditors for preserving its Business[1] and restructuring its indebtedness under the Bankruptcy Code. The liquidity to be provided under the DIP Loan Agreement will enable Debtor to continue to operate its Business in the ordinary course, thus preserving the value of the same. Good cause has, therefore, been shown for the relief sought in the Motion.

F.    Good Faith. The DIP Loan Agreement has been negotiated in good faith and at arm's-length by and among Debtor and the DIP Lenders. Any DIP Financing and/or other financial accommodations made to Debtor by the DIP Lenders (a "DIP Loan") pursuant to this Order and/or the DIP Loan Agreement shall be deemed to have been extended by the DIP Lenders in good faith, as that term is used in Bankruptcy Code Section 364(e), and the DIP Lenders shall be entitled to all protections afforded thereunder. The terms of the DIP Loan Agreement and this Order are fair and reasonable, reflect Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration. In entering into

---

[1] All capitalized terms not defined herein shall retain the meaning given to them in the Motion.

the DIP Loan Agreement and committing to make the DIP Loan, the DIP Lenders are relying on the terms of this Order as an integrated whole.

Based upon the foregoing findings, acknowledgements, and conclusions, and upon the record made before this Court at the Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED:**

1.      <u>Disposition</u>. The Motion is granted on a final basis, subject to the terms set forth herein. This Order shall be valid and binding on all parties-in-interest, and effective immediately upon entry notwithstanding the possible application of Bankruptcy Rules 6003(b), 6004(a), 6004(h), 7062, and 9014.

2.      <u>Authorization</u>. Upon entry of this Order, Debtor is authorized to: (i) enter into and perform its obligations under that certain DIP Loan Agreement, as outlined in the Motion by Debtor (in such capacity, "<u>Borrower</u>") and the DIP Lenders; (ii) obtain the DIP Financing and all related DIP Loans under the DIP Loan Agreement in the amounts described therein; (iii) use the proceeds of the DIP Loan as set out in the Motion—agreed to by and between Debtor and the DIP Lenders—subject to the terms and conditions set forth herein and in the DIP Loan Agreement; and (iv) reimburse the DIP Lenders for attorneys' fees and costs associated with the negotiation of the DIP Loan  Agreement and Motion, as provided for the DIP Loan Agreement. The DIP Loan Agreement and other related loan documents (collectively, the "<u>DIP Loan Documents</u>") shall constitute legal, valid, and binding obligations of Debtor, enforceable against Debtor, its successors, and in accordance with their terms. Debtor is hereby authorized to pay interest, fees, expenses and any other amounts required or allowed to be paid in accordance with this Order or the DIP Loan Agreement.

3.      <u>Authority to Execute and Deliver Necessary Documents</u>.  Debtor is authorized to enter into, execute, and deliver to the DIP Lenders any and all documents, agreements, and instruments that are contemplated by, related to, or to be delivered pursuant to or in connection with the DIP Loan Agreement or this Order to evidence or effectuate any of the transactions or other matters contemplated by or set forth in the DIP Loan Agreement or this Order.

4.      <u>Amendments, Consents, Waivers and Modifications</u>. Debtor may enter into non-material amendments, waivers, or modifications of or consents to the DIP Loan Agreement with the prior written consent of the DIP Lenders; provided, however, that any material amendment, waiver, modification, or consent shall require the approval of this Court.

5.      <u>DIP Lenders' Superpriority Claim</u>. The DIP Lenders are hereby granted an allowed superpriority secured claim (the "<u>Superpriority DIP Claim</u>") pursuant to Bankruptcy Code Section 364(d)(1) on all assets of the Debtor (the "<u>DIP Collateral</u>") for all the obligations owed by Debtor pursuant to the DIP Loan Agreement. The Superpriority DIP Claim shall have a superpriority over any and all administrative expenses of the kind that are specified in Sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546(c), 726, 1114, or any other provisions of the Bankruptcy Code.

6.      <u>Postpetition Lien</u>. To secure the DIP Loan and all amounts and obligations due thereunder, the DIP Lenders are hereby granted, pursuant to Sections 364(c) and (d) of the Bankruptcy Code, continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected post-petition, first-priority security interests in and lien on the DIP Collateral (the "<u>Postpetition Lien</u>"). The Postpetition Lien shall not at any time be made subject or subordinate to, or made *pari passu* with, any other lien, security interest or claim existing as of the closing date or thereafter arising.

7. <u>Automatic Perfection of Liens and Claims</u>. The Postpetition Lien shall be and hereby is effective, binding and perfected immediately upon entry of this Order without further action by Debtor or the DIP Lenders. The DIP Lenders shall not be required to prepare, file, register, or publish any financing statements, mortgages, hypothecations, account control agreements, notices of lien or similar instruments in any jurisdiction or filing or registration office, or to take possession of the DIP Collateral or to take any other action in order to validate, render enforceable or perfect the liens on the DIP Collateral granted by or pursuant to this Order. If the DIP Lenders shall, in their sole discretion, from time to time elect to prepare, file, register, or publish any such financing statements, mortgages, hypothecs, account control agreements, notices of lien or similar instruments, take possession of any DIP Collateral, or take any other action to validate, render enforceable, or perfect all or any portion of the Postpetition Lien: (A) all such documents and actions shall be deemed to have been filed, registered, published, or recorded or taken at the time and on the date that this Order is entered, and (B) such decision shall not negate or impair the validity or effectiveness of this paragraph or of the perfection of any other liens in favor of the DIP Lenders on the DIP Collateral.

8. <u>Automatic Stay Modified</u>. The automatic stay is modified as to the DIP Lenders to allow implementation of the provisions of this Order without further notice or order of the Court. Further, if there is an Event of Default, the automatic stay is modified as to the DIP Lenders to allow those DIP Lenders to deliver written notice to the Bankruptcy Court that the automatic stay provisions of Section 362 of the Bankruptcy Code have been vacated and modified to the extent necessary to permit the DIP Lenders to exercise all rights and remedies provided for in the DIP Loan Documents, and after ten (10) business days after such notice, to take any or all actions permitted by the DIP Loan Documents.

9.      Adequate Protection.    Pursuant to the terms of this Order and the DIP Loan Agreement, no further adequate protection payments are necessary to protect any secured creditor.

10.      Successors and Assigns. The DIP Loan Agreement and the provisions of this Order shall be binding upon Debtor and the DIP Lenders and each of their respective successors and assigns, and shall inure to the benefit of Debtor and the DIP Lenders each of their respective successors and assigns including, without limitation, any trustee, responsible officer, estate administrator or representative, or similar person appointed in a case for Debtor under any chapter of the Bankruptcy Code. The provisions of this Order shall also be binding on all of Debtor's creditors, equity holders, any official committee, and all other parties in interest.

11.      Subsequent Reversal or Modification. This Order is entered pursuant to Bankruptcy Code Section 364 and Bankruptcy Rules 4001(b) and (c), granting the DIP Lenders all protections afforded by Bankruptcy Code Section 364(e). If any or all of the provisions of this Order are hereafter reversed, modified, vacated, or stayed (whether on appeal or otherwise), that action will not affect (i) the validity of any obligation, indebtedness, or liability incurred hereunder by Debtor to the DIP Lenders prior to the date of receipt by the DIP Lenders of written notice of the effective date of such action, (ii) any fees, costs, expenses, and other amounts earned by and/or paid to the DIP Lenders pursuant to this Order or the DIP Loan Agreement prior to the date of receipt by the DIP Lenders of written notice of the effective date of such action, (iii) the validity and enforceability of any lien, claim, or priority authorized or created under this Order or pursuant to the DIP Loan Agreement, or (iv) the ability to enforce any rights or remedies contained herein. Notwithstanding any such reversal, stay, modification, or vacatur, any postpetition indebtedness, obligation, or liability incurred by Debtor to the DIP Lenders prior to written notice to the DIP Lenders of the effective date of such action, shall be governed in all respects by the original

provisions of this Order and the DIP Loan Agreement, as applicable, and the DIP Lenders shall be entitled to all the rights, remedies, privileges, and benefits granted herein and in the DIP Loan Agreement with respect to all such indebtedness, obligations, or liability.

12.     No Third-Party Beneficiary. Except as explicitly set forth herein, no rights are created hereunder for the benefit of any third party, any creditor, any party in a successor case or any direct, indirect or incidental beneficiary, and no third parties shall be deemed to be third-party beneficiaries of this Order.

13.     Adequate Notice. Adequate notice under the circumstances has been given to: (a) the Office of the United States Trustee for the Northern District of Georgia; (b) the parties included on each Debtor's list of twenty (20) largest unsecured creditors; (c) counsel to Alterna; (d) the United States Trustee; (e) counsel to the DIP Lenders; (f) the Non-Participating Patent Lenders; and, (g) any party that has requested notice in this case. Pursuant to Bankruptcy Rule 4001, no further notice of the request for the relief granted at the Hearing is required in connection with this Final Order.

14.     Entry of Order; Effect. This Order shall take effect immediately upon execution hereof, notwithstanding the possible application of Bankruptcy Rules 6004(g), 7062, 9014, or otherwise, and the Clerk of this Court is hereby directed to enter this Order on the Court's docket in this Chapter 11 Case.

15.     Retention of Jurisdiction. This Court shall retain jurisdiction over all matters pertaining to the implementation, interpretation and enforcement of this Order and/or the DIP Loan Agreement.

**[END OF ORDER]**

*Prepared and Presented by:*
**JONES & WALDEN LLC**

/s/ *Cameron M. McCord*
Cameron M. McCord
Georgia Bar No. 143065
699 Piedmont Ave. NE
Atlanta, Georgia 30308
(404) 564-9300
cmccord@joneswalden.com
*Attorney for Debtor*